IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Lisa A. Henderson, | ) | C/A No.: 1:11-1395-TMC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Michael J. Astrue, Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether he applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.      Relevant Background

        A.      Procedural History

On July 11, 2007,[1] Plaintiff filed an application for SSI under the Social Security

Act ("the Act"), 42 U.S.C. §§ 401–433, 1381–1383c.  Tr. at 124–26.  In her application,

she alleged her disability began on January 1, 2002.[2]  Tr. at 121.  Her application was

denied initially and upon reconsideration.  Tr. at 76, 80.  On January 14, 2010, Plaintiff

had a hearing before an Administrative Law Judge ("ALJ").  Tr. at 21–68.  The ALJ

issued an unfavorable decision on January 28, 2010, finding that Plaintiff was not

disabled within the meaning of the Act.  Tr. at 9–16.  Subsequently, the Appeals Council

denied Plaintiff's request for review, making the ALJ's decision the final decision of the

Commissioner for purposes of judicial review.  Tr. at 1–3.  Thereafter, Plaintiff brought

this action seeking judicial review of the Commissioner's decision in a Complaint filed

on June 8, 2011.  [Entry #1].

---

[1] Although the ALJ and the parties have indicated Plaintiff filed her application on
June 21, 2007, the application in the record is dated July 11, 2007.  *See* Tr. at 16, 124;
Entry #26 at 1; Entry #28 at 1.
[2] Plaintiff previously filed an application for benefits on April 23, 2003, which
was pending at the Appeals Council level when she filed the present claim.  Tr. at 133.
During review of her present application, the Commissioner declined to adopt *Albright v.
Commissioner of the Social Security Administration*, 174 F.3d 473 (4th Cir. 1999),
finding there was new and material evidence.  Tr. at 183.  In *Albright*, the Fourth Circuit
held that where an ALJ's decision has become the final decision of the Commissioner,
"[r]es judicata bars attempts to relitigate the same claim."  *Id.* at 475.

B.     Plaintiff's Background and Medical History

1.     Background

Plaintiff was 38 years old at the time she alleges her disability began.  Tr. at 133.

She completed her education through the tenth grade and her past relevant work ("PRW")

was as a restaurant cook and an employee at a plant nursery.  Tr. at 146.  She alleges she

has been unable to work since January 1, 2002.  Tr. at 121.

2.     Medical History

a.     Physical Impairments

Plaintiff went to the University Hospital emergency room on March 27, 2007

complaining that her lupus was acting up and of a rash on her hands and back, sore

throat, and dry eyes.  Tr. at 217.  Plaintiff stated that she ran out of medications recently

"so that is why she is here."  *Id.*  The treating physician observed full range of motion in

all extremities and generalized tenderness in the muscles of the arms and legs.  Tr. at 219.

The sores on her shoulders and back were noted to be consistent with acne.  *Id.*  Plaintiff

was given medications, including Prednisone and Percocet, and was sent home in stable

condition.  Tr. at 220.

The State Disability Determination Services referred Plaintiff to a physician for a

consultative examination.   Tr. at 236.   Susan Tankersley, M.D., saw Plaintiff on

September 18, 2007.  Tr. at 237.  Plaintiff told the doctor that she was diagnosed with

lupus about two to three years ago.  *Id.*  She described different symptoms resulting from

lupus, including myalgias, polyarthralgias, itching skin, and fatigue.  *Id.*  Plaintiff stated

that she had some numbness of the fourth and fifth fingers of her right hand and felt that her right hand and arm were relatively weaker. Tr. at 238. She also described right shoulder pain with limited range of motion. *Id.* Plaintiff described a long-term history of depression stemming from being raped and becoming pregnant with her daughter when she was 13 years old. Tr. at 239. Plaintiff was not currently under the care of a psychiatrist, but had been throughout the year. *Id.* She refused to count backward from 20 to 1. *Id.*

Dr. Tankersley's impression was that Plaintiff had been Prednisone-dependent since her diagnosis with lupus. Tr. at 237. She examined Plaintiff and found that Plaintiff walked normally. Tr. at 239. There was slight swelling in Plaintiff's right hand, a few scattered areas of "hard, shiny" papules in each hand, and her fingertips were "somewhat scleroderma appearing." *Id.* Plaintiff showed some decrease in strength in her right arm and exhibited a frozen right shoulder, with limited range of motion. *Id.* Strength and range of motion remained intact in Plaintiff's left arm. *Id.* Dr. Tankersley diagnosed Plaintiff with "[p]ossible" cubital or carpal tunnel syndrome in the right arm. Tr. at 240. The strength in Plaintiff's right leg was diminished and she exhibited decreased knee range of motion. *Id.*

Dr. Tankersley explained that she believed most of Plaintiff's arthralgias were related to her lupus. *Id.* However, Plaintiff's right shoulder pain may reflect osteoarthritis, which would be observed better on x-rays. *Id.* The doctor later ordered x-rays that showed sacralization of the fifth lumbar vertebra and anatomical alignment with

the exception of very minimal levoscoliosis. Tr. at 230. The x-rays also showed "mild" degenerative changes in Plaintiff's shoulder joint and a possible fracture of the upper arm bone (humerus). Tr. at 231. X-rays of Plaintiff's right hand showed some "minimal" erosive changes that raised the "suspicion" of an inflammatory arthritis, such as rheumatoid arthritis. Tr. at 232.

Plaintiff went to the emergency room again on October 8, 2007 chiefly complaining of a rash that had been present for several weeks. Tr. at 247. She also complained of joints in her hands hurting and stated that she had been out of her lupus medications for one month. *Id.* The doctor noted that "[s]ymptoms are currently rated as merely annoying." *Id.* Plaintiff was noted to have a rash localized to her extremities, but no drainage or swelling. Tr. at 248. She did not have any extremity tenderness and exhibited a normal mood and affect. Tr. at 249. Plaintiff was given Prednisone and an anti-inflammatory medication and discharged with a diagnosis of nonspecific rash. Tr. at 250.

A Residual Functional Capacity ("RFC") Assessment completed on December 10, 2007 by a state-agency medical reviewer stated that Plaintiff could only occasionally lift/carry 20 pounds, could frequently lift/carry 10 pounds, and could stand and/or walk and sit for a total of about 6 hours in an 8-hour workday. Tr. at 275. Plaintiff was not limited in her ability to push and pull, but was limited to occasional climbing, balancing, stooping, kneeling, crouching or crawling. Tr. at 275–76. The examiner also noted Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases and poor

ventilation and found Plaintiff was able to perform light work activity. Tr. at 278, 281. The prior ALJ decision was reviewed and an application of the *Albright* ruling was considered but not given controlling weight given new medical evidence. Tr. at 281.

A medical evaluation referral dated December 10, 2007 indicated that Plaintiff's mental impairments were severe and they were *Albright*-applicable. Tr. at 282.

Plaintiff went to Lamar Medical Center in February 2008 and reported that her pain had "gotten worse lately." Tr. at 285. She stated she had been out of medication for about four to five months and that ibuprofen had not helped her symptoms. *Id.* Plaintiff further stated that Prednisone would suppress her lupus-related rash, but that it had been flaring up more often. *Id.* The treating physician noted Plaintiff's spine was tender, but her extremities appeared normal with no swelling. Tr. at 286.

A second RFC Assessment dated April 4, 2008 indicated that Plaintiff could occasionally lift/carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk or sit for a total of about 6 hours in an 8-hour workday. Tr. at 311. Postural limitations included frequent climbing of ramp/stairs, balancing, stooping and crouching and occasional climbing of ladder/rope/scaffolds and occasional kneeling and crawling. Tr. at 312. Plaintiff was considered to be limited in reaching in all directions, but unlimited in handling, fingering or feeling. Tr. at 313. The reviewing consultant noted that Plaintiff's allegations were more severe than the verifiable physical and x-ray findings and that the disconnect was noted at the prior ALJ hearing. Tr. at 315.

Plaintiff went to the emergency room in November 2008 primarily complaining of an abscess on her buttocks. Tr. at 337. No arm or leg tenderness was found on examination. Tr. at 339.

Plaintiff returned to the emergency room again the following month complaining of an abscess under her right arm. Tr. at 342. Doctors noted a full range of motion in all extremities, and no extremity tenderness. Tr. at 344.

On March 2, 2009, Plaintiff again visited the emergency room complaining of facial pain and joint pain. Tr. at 346. Doctors found an abscess on Plaintiff's face and aspirated it. *Id.* On further examination, doctors found full range of motion in Plaintiff's arms and legs, with no tenderness or swelling. Tr. at 348.

On March 3, 2009, Plaintiff went back to the Lamar Medical Center. Tr. at 327. She had been obtaining her prescriptions through the University Hospital emergency room for the past year. *Id.* Plaintiff complained of several symptoms including a rash, an abscess on her face, and musculoskeletal pain, including stiffness in her knees and wrists. *Id.* The treating physician noted that Plaintiff's musculoskeletal symptoms were "mild to moderate" and had lasted for the past year. *Id.*

b.     Psychological Impairments

Plaintiff saw John B. Bradley, Ph.D., for a mental status evaluation on October 10, 2007. Tr. at 252. Plaintiff presented with a depressed demeanor and reported that her childhood contained several traumatic events, including being raped and becoming pregnant by a cousin at age 13 and an attempted rape by another man when she was

older.  *Id.*  She was fondled by a neighbor as a child.  *Id.*  Dr. Bradley recorded that Plaintiff had a history of bipolar disorder having been diagnosed and treated by the local mental health center.  *Id.*  Plaintiff reported that she suffered from depression and had symptoms of difficulty sleeping, anhedonia (inability to experience pleasure from activities usually found enjoyable), poor concentration, crying spells, motor retardation, fatigue, poor self-esteem, and mood swings.  *Id.*  She also reported hand tremors, exaggerated startle response, heart palpitations and sweating.  Tr. at 253.  She said that she stayed to herself and did not like to be around crowds.  *Id.*  She stated that she attempted to do chores, but was rarely able to because of her physical condition.  *Id.*  She also stated that she attempted to read, but she could not concentrate on what she was reading. *Id.*

Dr. Bradley observed that Plaintiff's posture and gait were normal.  *Id.*  She understood simple explanations and directions.  *Id.*  Dr. Bradley's evaluation of cognitive processes indicated that Plaintiff's attention and concentration skills were poor.  *Id.*  She left out several letters when asked to recite the alphabet, but was able to recite the days of the week forwards and backwards.  *Id.*  Dr. Bradley observed that Plaintiff's affect was blunted and her mood was depressed.  *Id.*  She was able to communicate using simple language and the quality of her speech was normal.  *Id.*  Her thinking was clear and goal directed and was at a normal rate.  *Id.*  Her memory appeared to be below average for the events of her life.  *Id.*  Dr. Bradley concluded that Plaintiff appeared able to meet her personal needs and could identify and avoid simple dangers.  Tr. at 254.  He stated that

8

she could probably manage her own finances in an adequate fashion.  *Id.*  He found that her concentration was very poor and she was anxious, as well as depressed.  *Id.*

Agency consultant Kevin King completed a Psychiatric Review of Plaintiff on November 29, 2007.  Tr. at 256.  He noted that Plaintiff had bipolar disorder and was moderately limited in activities of daily living ("ADLs") and maintaining social functioning, concentration, persistence, and pace.  Tr. at 259, 266.  The consultant's notes further indicated that Plaintiff had credible bipolar disorder, but demonstrated moderate mental limitations.  Tr. at 268.

Mr. King also completed a mental RFC assessment in which he found that Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, and interact appropriately with the general public.  Tr. at 270–71.  Mr. King also found that Plaintiff was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Tr. at 271.  Plaintiff was not significantly limited in the ability to carry out simple or detailed instructions, perform activities within a schedule, maintain regular attendance, make simple work-related decisions, or get along with co-workers.  Tr. at 270–71.  Mr. King noted Plaintiff would work best in a position that has limited contact with the general

public, would respond best to positive supervision, and could recognize and avoid normal workplace hazards. Tr. at 272.

Another agency consultant completed a second Psychiatric Review on March 18, 2008. Tr. at 288. The consultant noted Plaintiff had bipolar syndrome with a history of episode periods manifested by the full symptomatic picture of both manic and depressive syndromes. Tr. at 291. He found Plaintiff had the same functional limitations identified in the earlier Psychiatric Review. Tr. at 298. The corresponding mental RFC assessment identified many of the same limitations found in the 2007 assessment; however, the consultant also found that Plaintiff was moderately limited in her ability to carry out detailed instructions. Tr. at 302. Unlike the prior assessment, the 2008 assessment found that Plaintiff was not significantly limited in her ability to sustain an ordinary routine without special supervision. *Id.* The consultant opined that Plaintiff was capable of performing simple tasks for two or more hours without special supervision, could maintain a regular work schedule, and would be better in a job that did not require ongoing interaction with the public. Tr. at 304.

A case analysis dated May 6, 2008 indicated that Plaintiff had a severe mental impairment, but retained the mental ability to perform simple, routine, unskilled tasks and activities. Tr. at 320. The reviewer found that Plaintiff's functional limitations arose from her physical impairments and that she could maintain persistence as permitted by her physical impairments. *Id.*

C.     The Administrative Proceedings

1.     The Administrative Hearing

a.     Plaintiff's Testimony

At the January 14, 2010 hearing, Plaintiff testified that she last worked in 2002 at the North Augusta Country Club where she cooked and washed dishes. Tr. at 26. She stopped working after about two months because she was having problems with her arms and was dropping things. *Id.* She identified two other jobs she held in the last 15 years, but could not recall the dates. Tr. at 27. She testified she worked at Meinak's Restaurant for over a year cooking, washing dishes, and stocking. *Id.*

Plaintiff testified she would not be able to do her job at the country club now because she is in constant pain and always taking pain killers. Tr. at 28. She identified pain in her joints, arm, neck, and knees. *Id.* She also stated she would be unable to work for mental reasons caused by her hair falling out, wearing a wig, and having sores all over her body. Tr. at 29. Plaintiff testified she has problems sleeping at night and cries often. *Id.*

Plaintiff stated she is being treated by Dr. Rucker at Lamar Clinic for her lupus, but had not been there in five months because she cannot afford the office visits. Tr. at 29–30. She testified that she calls in for her pain and psychiatric medications. Tr. at 30–31. She stated she used to receive mental health treatment, but has not gone in two or three years because she cannot afford it. *Id.*

Plaintiff stated she was in the process of getting her GED at the encouragement of her son. Tr. at 31, 35. She said she helped her sister obtain her GED four or five years prior. Tr. at 35. Plaintiff's son testified that he planned to assist her with obtaining her GED. Tr. at 38. He stated Plaintiff's eyes are really bad so he would be doing the reading and writing for her and would help her study. *Id.* He said he would not need to explain things to Plaintiff, just help her read. *Id.*

Plaintiff testified she lived with her grown daughter and 15-year-old granddaughter. Tr. at 39. Her daughter received disability benefits because she has Type I diabetes and a bad heart. Tr. at 39–40. Plaintiff stated her daughter helped her and described her daughter as self-sufficient. Tr. at 40.

Plaintiff stated she stopped doing household chores, cooking, and shopping in 2004 or 2005. Tr. at 41–42, 45. She tells her daughter what to buy at the grocery store. Tr. at 43. She testified that she does not go out much now because she is in pain and embarrassed about her hair and break outs. Tr. at 44. Her daughter helps her do leg stretching exercises, but Plaintiff testified that if she tries walking up a hill she practically starts crying. Tr. at 46–47. She stated she goes on a treadmill at home, but not for long. Tr. at 47. During the day, she stated she watches TV sometimes, reads the Bible for 20–30 minutes, and exercises her legs and arms for one or two hours. Tr. at 47–48. She testified she spends practically the whole day laying down and sleeping, but does not sleep at night because of the pain. Tr. at 49.

Plaintiff testified that her insurance is only accepted at the hospital, not at the doctor's office. Tr. at 51.

Upon questioning by her counsel, Plaintiff stated her right hand acts up all the time. Tr. at 63. She stated that it gets numb and swells up sometimes and she is not able to tightly grasp objects. *Id.* She said she can do practically nothing with that hand and that prior surgery on it had no effect. Tr. at 63–64. She stated she can hold a fork "a little" and cannot hold a small jelly jar for very long. Tr. at 64. She testified her left hand is not as bad as her right but is getting that way. *Id.* Plaintiff estimated her hand is not good at all to her for about three hours out of an eight-hour workday. Tr. at 66.

### b. Medical Expert's Testimony

A Medical Expert ("ME") reviewed the record and testified at the hearing. Tr. at 54. The ME testified that the medical record established severe mental limitations. *Id.* He did not agree with the record diagnosis of bipolar disorder, but stated he thought the record documented some type of mood disorder due to pain. *Id.* The ME then opined that Plaintiff's mood disorder limitations were not at listing level severity. *Id.* He testified that Plaintiff had mild social limitations; moderate limitations in concentration, pace, and persistence; the ability to understand and remember simple instructions; the ability to understand and concentrate on simple tasks for two-hour periods; and the ability to interact appropriately with peers and supervisors and adapt to workplace changes. Tr. at 54–55.

The ME testified that he did not see any evidence in the record to support agency-examiner John Bradley's opinion assigning Plaintiff a GAF score of 50. Tr. at 55. The ME stated he did not think Plaintiff was precluded from performing simple tasks based on depression. Tr. at 56. When asked about Plaintiff's claimed embarrassment related to her physical problems, the ME stated her limitation in the social area would be moderate at worst. *Id.* The ME agreed that Plaintiff would be able to handle simple, non-detailed, one or two-step tasks that can be performed without dealing with the general public. *Id.* He stated stress would not be a significant factor with that type of work. *Id.*

c.     Vocational Expert's Testimony

A Vocational Expert ("VE") also reviewed the record and testified at the hearing. Tr. at 57. The VE categorized Plaintiff's PRW as a cook helper as medium, unskilled work with an SVP of 2. Tr. at 58. The ALJ described a hypothetical individual of Plaintiff's vocational profile with restrictions that limited the hypothetical individual to light work performing simple, non-detailed, one to two-step tasks that do not involve dealing with the public or cooperative work efforts with coworkers and no frequent or repetitive stooping, crouching, kneeling, crawling or climbing. *Id.* The ALJ asked whether there were any jobs in the region or nationally that the hypothetical person could perform. *Id.* The VE testified to occupations that matched the hypothetical: small products assembler (DOT 706.684-022), light, SVP 2 (3,000 jobs in Georgia; 75,000 nationally); garment sorter (DOT 222.687-014) (2,500 jobs in Georgia; 429,000 nationally); and office helper (DOT 239.567-010), light SVP 2 (2,600 jobs regionally;

350,000 nationally).  Tr. at 57–61.  The VE testified that the officer helper jobs, half of the small products assembler jobs, and one-third of the garment sorter jobs would allow for a sit/stand option.  Tr. at 62.

Upon questioning by Plaintiff's counsel, the VE stated that the limitation of Plaintiff's right hand not being useful for three hours out of an eight-hour workday would preclude the jobs he listed and all other jobs in the national and regional economies.  Tr. at 67.

### 2.     The ALJ's Findings

In his January 28, 2010 decision, the ALJ made the following findings of fact and conclusions of law:

1.  The claimant has not engaged in substantial gainful activity since June 21, 2007, the application date (20 CFR 416.971 *et seq.*).
2.  The claimant has the following severe impairments: lupus, depression and adjustment disorder (20 CFR 416.920(c)).
3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d) and 416.926).
4.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except with restrictions against frequent or repetitive stooping, crouching, kneeling, or crawling, and against climbing, and further limited to simple non-detailed, one-to-two step tasks, that does not included [sic] dealing with the public or performance of cooperative efforts with co-workers.
5.  The claimant is unable to perform past relevant work (20 CFR 416.965).
6.  The claimant was born on October 7, 1963 and was 43 years old, which is defined as a younger individual age 18–49, on the date the application was filed (20 CFR 416.963).
7.  The claimant has a limited education and is able to communicate in English (20 CFR 416.964).
8.  Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 21, 2007, the date the application was filed (20 CFR 416.920(g)).

Tr. at 9–16.

II. Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1) The ALJ failed to properly assess Plaintiff's credibility and subjective complaints; and

2) The ALJ did not adequately explain his finding regarding Plaintiff's RFC as required by SSR 96-8p.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A. Legal Framework

1. The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step.).

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen v. Yuckert*, 482 U.S. 137, 146. n.5 (1987) (regarding burdens of proof).

2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See*

*id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.    Analysis

1.    The ALJ Properly Analyzed Plaintiff's Credibility and Subjective Complaints

Plaintiff argues the ALJ's assessment of her subjective allegations of disabling pain was legally and factually erroneous because there was no meaningful analysis of her credibility. [Entry #29 at 2–3; Entry #26 at 28]. The Commissioner argues the ALJ reasonably found Plaintiff less than credible based on her history of seeking treatment

only after she ran out of medication and the lack of objective evidence supporting Plaintiff's claims of severe limitations. [Entry #28 at 8–9].

Prior to considering a claimant's subjective complaints, an ALJ must find a claimant has an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause subjective complaints of the severity and persistence alleged.[4] *See* 20 C.F.R. § 404.1529; 20 C.F.R. § 416.929; SSR 96-7p; *Craig*, 76 F.3d at 591–96 (discussing the regulation-based two-part test for evaluating pain). The first part of the test "does not . . . entail a determination of the intensity, persistence, or functionally limiting effect of the claimant's asserted pain." 76 F.3d at 594 (internal quotation omitted). Second, and only after claimant has satisfied the threshold inquiry, the ALJ is to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." *Id.* at 595. This second step requires the ALJ to consider the record as a whole, including both objective and subjective evidence, and SSR 96-7p cautions that a claimant's "statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p, ¶ 4.

---

[4] Although Plaintiff initially argued that the ALJ erred in not adequately analyzing whether her medically-determinable impairments could be expected to cause her alleged symptoms, she appears to have abandoned that argument in her reply brief. [Entry #26 at 26–28; Entry #29 at 1]. As was pointed out by the Commissioner, it is unclear why Plaintiff would challenge a finding that was favorable to her claim. [Entry #28 at 7].

If an ALJ rejects a claimant's testimony about her pain or physical condition, he must explain the bases for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, ¶ 5. In evaluating the intensity, persistence, and limiting effects of an individual's symptoms and the extent to which they limit an individual's ability to perform basic work activities, adjudicators are to consider all record evidence, which can include the following: the objective medical evidence; the individual's ADLs; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; any measures other than treatment the individual uses to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p.

Here, after setting forth the applicable regulations, the ALJ considered Plaintiff's subjective claims under the required two-step process. *See Craig,* 76 F.3d at 591–96.

The ALJ found Plaintiff's impairments could reasonably be expected to cause some of the symptoms she alleged, but determined that Plaintiff's testimony "concerning the intensity, persistence and limiting effects" of her symptoms was "not credible to the extent" the testimony was inconsistent with the ALJ's determination of her RFC. Tr. at 12.

The ALJ found that Plaintiff's perception of herself as fully disabled and unable to carry out any activities was inconsistent with the medical evidence of record. Tr. at 14. For example, in an emergency room visit on October 8, 2007, Plaintiff was without medication and rated her symptoms as "merely annoying." Tr. at 13. The only radiology reports in the record were essentially unremarkable, except for some "suspicion" of possible rheumatoid arthritis in the right hand, and shoulder, with mild degenerative changes. Tr. at 14.

In making his credibility determination, the ALJ did not rely solely on the lack of objective evidence. As he is required to do, he cited additional reasons why Plaintiff's testimony was not credible. *Mickles v. Shalala,* 29 F.3d 918, 921 (4th Cir. 1994). Most significantly, he noted that Plaintiff only sought treatment and reported flare ups of her lupus and rash when she was out of medication. Tr. at 13–14. In both March and October 2007, Plaintiff visited the emergency room when she was out of medication. Tr. at 13. The ALJ went on to state that even when without medication, Plaintiff's physical complaints were limited. Tr. at 14.

The ALJ addressed the report of Dr. Tankersley in which the doctor opined that most of Plaintiff's joint pain was lupus-related, but suspected Plaintiff may also have osteoarthritis in her knee and shoulder. *Id.* The ALJ noted that Plaintiff's consultative examination with Dr. Tankersley occurred just a few weeks prior to Plaintiff's October 2007 emergency room visit in which she stated that she had been out of medication for one month. Tr. at 14, 247.

If the ALJ had relied solely on a lack of objective evidence to support his credibility determination, Plaintiff would have been correct that he did so in error. His decision, however, sets forth other grounds upon which he appropriately relied in discounting Plaintiff's subjective complaints. The ALJ's determination not to fully accept Plaintiff's claims of wholly disabling pain is supported by substantial evidence, and the undersigned recommends Plaintiff's first allegation of error be dismissed.

2.    The ALJ Properly Determined Plaintiff's RFC and Found Her Arthritis to be a Non-Severe Impairment

Plaintiff next argues the ALJ erred in determining her RFC. Specifically, she claims the ALJ erred in not finding that she had any manipulative restrictions and that his RFC findings are not supported by the evidence or properly explained as required by SSR 96-8p. [Entry #26 at 33-34]. As a corollary to her RFC argument, Plaintiff argued in her reply brief that the ALJ improperly found arthritis was not a severe impairment. [Entry #29 at 4-5]. The Commissioner argues Plaintiff failed to meet her burden of establishing arthritis as a severe impairment and the ALJ properly excluded manipulative limitations from Plaintiff's RFC. [Entry #28 at 10-12].

23

The ALJ's RFC assessment should be based on all the relevant evidence. 20 C.F.R. § 404.1545(a). Social Security Ruling 96–8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8p. The RFC must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis...." *Id.* The ALJ must discuss the claimant's ability to work in an ordinary work setting on a regular work schedule. *Id.*

Here, the ALJ properly considered all of the relevant medical evidence, including Plaintiff's complaints of joint pain in her hands, in determining her RFC and his determination is supported by substantial evidence in the medical records. As the ALJ noted, the record shows that Plaintiff complained of joint pain only after running out of medications. Tr. at 13–14. Such complaints are not indicative of a disabling hand limitation. *Gross v. Heckler,* 785 F.2d 1163, 1165–6 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). Although Plaintiff cites Dr. Tankersley's report in support of her claimed manipulative limitations, her visit to Dr. Tankersley occurred just weeks prior to Plaintiff visiting the emergency room and stating she had been out of medication for one month. Tr. at 14, 247. Even when she had been out of medication for one month, Plaintiff described her symptoms as "merely annoying." Tr. at 13, 247.

The ALJ's decision is also supported by a lack of objective clinical findings. The ALJ noted that the only radiological evidence in the record was essentially unremarkable, except for some "suspicion" of possible rheumatoid arthritis in the right hand and shoulder with mild degenerative changes. Tr. at 14.

For these reasons, the undersigned recommends a finding that the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence.

With regard to Plaintiff's objections to the ALJ's finding that her arthritis was not a severe impairment, the undersigned likewise concludes the ALJ's decision was supported by substantial evidence. An impairment is "not severe" or insignificant only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984). It is the claimant's burden to prove that she suffers from a medically-severe impairment. *Bowen v. Yuckert*, 482 U.S. 137, 145 n.5 (1987). Plaintiff has failed to meet that burden. First, there is no objective finding of arthritis in the record. The only x-rays in the record note merely a suspicion of possible rheumatoid arthritis in Plaintiff's right hand. Tr. at 14. Second, Plaintiff's primary complaint associated with her alleged arthritis is joint pain. [Entry #29 at 3–4]. The ALJ found Plaintiff's joint pain was limited and only when she was out of medication. Tr. at 14. Furthermore, Dr. Tankersley attributed most of Plaintiff's joint pain to lupus, which the ALJ found to be a severe impairment. *Id.*

Consequently, Plaintiff did not meet her burden of establishing arthritis as a severe impairment.

To the extent, however, that the ALJ may have erred in finding Plaintiff's alleged arthritis not to be a severe impairment, Plaintiff has suffered no harm. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating a claimant's pain because "he would have reached the same result notwithstanding his initial error"). A finding of a single severe impairment at step two of the sequential evaluation is enough to ensure that the factfinder will progress to step three. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."). The undersigned agrees with other courts that find no reversible error where the ALJ does not find an impairment severe at step two provided that he considers that impairment in subsequent steps. *See Washington v. Astrue*, 698 F.Supp.2d 562, 580 (D.S.C. 2010) (collecting cases). Here, the ALJ considered Plaintiff's alleged disability due to lupus, arthritis, headaches, body sores, and carpal tunnel syndrome in determining her RFC and properly found, as is discussed above, that Plaintiff's RFC need not include any manipulative limitations. Tr. at 12–14.

For the foregoing reasons, the undersigned recommends affirming the ALJ's findings as to Plaintiff's severe impairments and RFC.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the Commissioner, but to determine whether his decision is supported as a matter of fact and law.  Based on the foregoing, the undersigned recommends the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

July 20, 2012                                        Shiva V. Hodges
Columbia, South Carolina                    United States Magistrate Judge


**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).